UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL JOYCE,<br>Individually and on behalf of a class of others<br>similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>JOHN HANCOCK FINANCIAL SERVICES,<br>INC. SEVERANCE PAY PLAN and JOHN<br>HANCOCK FINANCIAL SERVICES, INC.,<br>as Administrator and Fiduciary of the John<br>Hancock Financial Services, Inc. Severance<br>Pay Plan<br><br>   Defendants. | Civil Action No.05-11428 – WGY |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### I. PRELIMINARY STATEMENT

#### A.    *Background and Nature of the Case*

Plaintiff, Daniel Joyce ("Joyce" or "Plaintiff"), individually and on behalf of a putative class of others similarly situated ("Putative Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby submits this memorandum in support of his Motion for Class Certification seeking certification of this action as a class action and Daniel Joyce as class representative.

This case, *inter alia*, is a claim for severance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001-1461, and specifically, 29 U.S.C. §§ 1132(a)(1)(B). Plaintiff seeks to recover, individually and on behalf of the Putative Class, millions of dollars in severance benefits Defendants John Hancock Financial Services, Inc.

Severance Pay Plan ("the Plan") and John Hancock Financial Services, Inc., as Administrator and Fiduciary of the Plan ("Hancock") wrongfully denied him and each member of the Putative Class under the Plan. The wrongful denial of benefits is the product of the Defendants' arbitrary, capricious and incorrect interpretation and application of the Plan.

Specifically, Joyce and the Putative Class, all former employees of Hancock, seek to recover the value of severance benefits they were otherwise entitled to receive under the Plan when in July 2003 their employment with Hancock was involuntarily terminated due to significant staff reductions stemming from the sale of the John Hancock Tower Complex (the "Tower Complex").

Effective November 18, 2002, Hancock amended Sections 3.2(c) and (d) of the Plan (the "Plan Amendment") to read as follows:

> Employment is not terminated for the purposes of this Plan if an employee:
> (c) is offered a comparable position, as determined by the Company, as an employee with, or provides services in any capacity to a Successor Company, or
> (d) accepts any position as an employee with, or provides services in any capacity to, a Successor Company.

The following month, Hancock distributed its Summary Plan Description ("SPD") of the Plan to Joyce, which stated the following with respect to the Plan Amendment:

> Effective November 18, 2002, two provisions of the Severance Pay Plan were changed as follows:
>
> - In the event of the sale or outsourcing of a business unit, if an employee of the business unit is offered a comparable job by, or accepts a non-comparable job with the purchaser or successor company, severance will not be paid (comparable will be defined as similar salary, competitive benefit offerings and a work location within 50 miles of the current work location).

Hancock, as the Plan administrator and fiduciary, determined initially and on an illusory administrative appeal, that Joyce and the Putative Class members were not eligible for severance benefits under the Plan because they were offered and accepted a "comparable position," by Beacon Capital Partners Management, LLC ("Beacon"). In its haste to render its decision to

deny benefits, Hancock knowingly and unreasonably ignored the plain language of the SPD, which unambiguously interprets the "comparable job provision" as being applicable only "[i]n the event of a sale or outsourcing of a business unit." The substantial evidence on the record indicates that: 1) there was no sale or outsourcing of the business unit known as the Real Estate Operations Department ("REOD"); 2) Joyce and the Putative Class were not offered a "comparable job," as defined by the SPD; and 3) Joyce and the Putative Class accepted employment with Beacon after Hancock misrepresented to them that they were ineligible to receive severance benefits and further misrepresented to them that Beacon's benefit offerings was competitive with benefits offered by other property management companies.

Whether Hancock's conduct and bias warrant a diminished or de novo standard of review, as opposed to deferential, whether the sale of the Tower Complex constituted a "sale or outsourcing" of the REOD, whether Beacon's benefit offerings to Joyce and the Putative Class was "comparable" as the term is used in the SPD, whether Hancock improperly denied severance benefits to Joyce and the Putative Class, whether Joyce and members of the Putative Class were prejudiced as a result of their reading of the faulty SPD, and whether Hancock breached its fiduciary duties to Joyce and the Putative Class are questions common to each former Hancock employee. Resolution of these questions, therefore are amenable to the class-action format.

## B.     *The Proposed Class*

Pursuant to FED. R. CIV. P. 23(a) and (b)(3) Plaintiff seeks class certification on behalf of the following Putative Class:

> All persons who: 1) are or were participants in or beneficiaries of the Plan on May 5, 2003; and 2) are or were employees/contractors of the Real Estate Operations Department in Boston, Massachusetts; and 3) received an offer of employment from Beacon Capital Partners Management, LLC ("Beacon"); and 4) were subsequently denied Plan benefits and the option to exercise

3

Plan benefits because the offer of employment from Beacon was deemed "comparable" by any of the named Defendants to this action.

## II. STATEMENT OF FACTS

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiff incorporates by reference the assertions made in his Complaint and in his Local Rule 56.1 Statement of Undisputed Facts in Support of His Cross-Motion for Partial Summary Judgment.

## III. ARGUMENT

### A.    *General Legal Standards Governing Class Certification*

The class certification analysis is two pronged. Under Rule 23(a), the Court must determine whether the Plaintiffs meet the requirements of numerosity, commonality, typicality, and adequacy. *Church v. General Electric Co.*, 138 F. Supp.2d 169, 181 (D.Mass. 2001). Under Rule 23(b)(3), the Court must then consider whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* All doubts should be resolved in favor of class certification. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003), citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of trial so require").

"In order to effectively make the Rule 23(b)(3) inquiry, it is necessary for the Court to consider what will have to be proved at trial and thus whether those matters can be presented by common proof or whether individual proof will be required." 7B Charles Alan Wright et al., *Federal Practice and Procedure*, § 1785 (2001 Supp.). This inquiry requires the Court to

4

examine the elements of the claims and defenses. *Id.* However, it does not involve an assessment of the merits of the underlying claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (holding that the court is not to conduct an exploration of the merits when deciding upon certification of a class). Plaintiff bears the initial burden of advancing reasons why a putative class action meets the requirements of Rule 23. However, plaintiff's burden is not a heavy one. *See Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 368 (E.D. Pa. 1980); *see also Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982). Once a plaintiff has demonstrated a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is on the defendants to demonstrate otherwise. 2 H. Newberg, *Newberg on Class Actions* (3rd Ed. 1992) § 7.22 at 7-74 to 7-75. Provided that a plaintiff's contentions regarding the class issues are based upon a reasonable foundation, the court should not deny certification because of a defendant's challenge. *See Solenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417 (D.N.M. 1988); *In re Industrial Gas Antitrust Litig.*, 100 F.R.D. 280 (N.D. Ill. 1983); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736 (S.D.N.Y. 1979).

A well-pleaded complaint generally constitutes a prima facie showing for class certification, thereby shifting the burden to a party opposing the class. 2 H. Newberg, *Newberg on Class Actions* (3rd Ed. 1992) § 7.22 at 7-74 to 7-75. The Court, however, may look past the pleadings to determine whether the requirements of Rule 23 have been met. *See Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982); *see also Swack v. Credit Suisse First Boston,* 230 F.R.D. 250, 257 (D.Mass.2005) (in evaluating the plaintiffs' motion to allow the case to proceed as a class action, the court may assess "the allegations in the complaint in light of the entire record presented ⋯ on the motion for class certification"). This may be necessary for the Court to

"understand the claims, defenses, relevant facts, and applicable substantive law." *Castano v.*

*American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). Discretion is afforded to the Court to

determine whether the existing record is sufficient to make a meaningful determination. *See*

Wright, *supra*, § 1785, pp. 107-110 (1986 ed.).

**B.    *The Proposed Class Satisfy the Requirements of Rule 23(a)***

The prerequisites set forth in the FED. R. CIV. P. 23(a) for certification of a class are

satisfied in every regard in this case. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if (1) the class is so numerous that
> joinder of all members is impracticable, (2) there are questions of law
> or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class, and (4) the representative parties will fairly and adequately
> protect the interests of the class.

FED. R. CIV. P. 23(a)

This action should be certified as a class action because, as discussed below, all of the

requirements of Rule 23(a) have been met.

**1.    The Putative Class Is So Numerous That Joinder of All Members Is
Impracticable**

"Rule 23(a)(1) provides that a member of a class may sue on behalf of all class members

only if 'the class is so numerous that joinder of all members is impracticable.'" *Mack v. Suffolk*

*County*, 191 F.R.D. 16, 22 (D.Mass. 2000). "[T]he proper focus is not on numbers alone, but on

the practicality of joinder in light of the size of the class and other factors." *Canas-Garcia v,*

*McKinnon*, 1984 U.S. Dist. Lexis 14946 *9 (D.Mass. 1984) (citation omitted) ("joinder of

unknown individuals is certainly impracticable."). A court may infer numerosity given the

circumstances of the underlying claim. *See In re New England Mut. Life Ins. Co. Sales Practices*

*Litig.*, 183 F.R.D. 33, 39 (D.Mass. 1998). Moreover, courts are "quite willing to accept common

6

assumptions in order to support a finding of numerosity." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D.Mass. 1989).

In applying this rule, it has consistently been held that joinder is deemed impracticable where the class is composed of at least 40 members (and sometimes less).[1]  See *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) (recognizing that "[o]ther courts in this disctrict have noted that a 40 person class is 'generally found to establish numerosity.'"). Here, numerosity is easily met.  Counsel, through discovery, has identified 73 former Hancock employees who were offered employment from Beacon, informed by Hancock that they were ineligible for severance benefits and accepted Beacon's offers.  See *Exhibit 1*.  The Putative Class is clearly numerous enough to be certified especially in light of the fact that the initial determination to deny severance benefits and the denial of the appeal to deny severance benefits to Joyce and the Putative Class were reached by evalauting and assessing the Putative Class as a whole and not on an individual basis.

In sum, Rule 23(a)(1) is satisfied because the number of Putative Class members makes joinder impracticable.

---

[1]  *See, e g , Grant v Sullivan*, 131 F R.D. 436 (M.D. Pa. 1990) (certifying class with as few as fourteen members); *Cypress v Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Basile v Merrill Lynch Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506 (S.D. Ohio 1985) (class certified with 23 members); *Philadelphia Electric Co v Anaconda American Brass Co*, 43 F.R.D. 452 (E.D. Pa. 1983) (certification of class with 25 members); *Riordan v Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (holding 10-29 class members sufficient); *Swanson v American Consumer Industries*, 415 F.2d 1326 (7th Cir. 1969) (40 sufficient); *Pistol v Lynch*, 96 F R D. 22, 26 (D. Hawaii 1982) (class of "over forty members" sufficiently large to satisfy the numerosity requirement); *In re Intel Securities Litigation*, 89 F R.D. 104, 111 (N.D. Cal. 1981) (where class members "exceed forty" numerosity requirement will be met); *1 Newberg on Class Actions*, § 3.05 at 3-25 (3rd ed. 1985) (A class size above 40 "should raise a presumption that joinder is impracticable . . . ."); *Sala v National Railroad Passenger Corp*, 120 F R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Kulins v Malco*, 121 Ill App 3d 520, 530 (1st Dist. 1984) (19 and 47 sufficent); *Leyva v Buley*, 125 F.R D. 512 (E.D. Wash. 1989) (joinder of 50 migrant workers impracticable); *Zefiro v First Pennsyvania Banking & Trust Co*, 96 F R.D. 567, 569 (E.D. Pa. 1983) (51 class members sufficient); *Korn v Franchard Corp*, 456 F.2d 1206, 1209 (2d Cir. 1972) (70 class member sufficient); *Eisenberg v Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v York Hospital*, 745 F 2d 786, 808 (3d Cir. 1984), *cert denied*, 470 U.S. 1060 (1985) (92 class members meets numerosity requirement).

2.    **There Are Questions of Law of Fact Common to the Putative Class**

To establish the commonality prerequisite, the Plaintiffs must show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *See Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D.Mass. 1997); *Curtis v. Comm'r, Me. Dep't of Human Servs.*, 159 F.R.D. 339, 341 (D.Me. 1994). Because the class need share only a single legal or factual issue at this stage of the analysis, the commonality requirement ordinarily is easily satisfied. See *Swack*, 230 F.R.D. at 259 (quoting *Payne*, 216 F.R.D. at 25.).

The Plaintiff alleges that Hancock, under any standard of review, improperly denied severance benefits to Joyce and the Putative Class when in July 2003 their employment with Hancock was involuntarily terminated due to significant staff reductions stemming from the sale of the Tower Complex. Plaintiff alleges that Hancock, when considering the Putative Class' severance eligibility, did not refer to the plain, ordinary terms of the SPD to interpret the Plan Amendment, which requires that prior to arriving at any determination as to whether a Successor Company has offered a Hancock employees a "comparable job," Hancock must first determine there has been a sale or outsourcing of a Hancock business unit. Plaintiff further alleges that Joyce and the Putative Class were not offered a "comparable job," as defined by the SPD, that Hancock failed to follow their own administrative guidelines for assessing whether Beacon's jobs were comparable, that Beacon's benefit offerings were not competitive with benefits offered by other property management companies and that Hancock breached its fiduciary duties to Joyce and the Putative Class by not producing copies of the competitive assessment analysis of Beacon's benefit offerings and by proffering misrepresentations to the Putative Class.

8

Here, commonality is easily established. The basic and in-common questions are whether Hancock's conduct and bias warrant a diminished or de novo standard of review, as opposed to deferential, whether the sale of the Tower Complex constituted a "sale or outsourcing" of the REOD, whether Beacon's benefit offerings to Joyce and the Putative Class was "comparable" as the term is used in the SPD, whether Hancock improperly denied severance benefits to Joyce and the Putative Class, whether Joyce and members of the Putative Class were prejudiced as a result of their reading of the faulty SPD and whether Hancock breached its fiduciary duties to Joyce and the Putative Class.

Hancock's own procedures for determining that Joyce and members of the Putative Class were not eligible for severance benefits involved conducting an evaluation that considered the Putative Class as a whole. Moreover, when Joyce and twenty-two other former Hancock employees from the REOD requested review of the initial denial of their benefits by Hancock's Company Benefit Plan Appeal Committee, their appeals were considered collectively because each appeal presented similar issues.

As exemplified by Hancock's own administrative procedures, Hancock's actions are common to and affect the Plaintiff as well as all members of the Putative Class. Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984) (citation omitted); *see also Curtis*, 159 F.R.D. at 341. Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.     Joyce's Claims are Typical of the Claims of the Putative Class

To satisfy "typicality," the class representatives' injuries must arise from the same event or course of conduct as the injuries of other class members, and their claims must be based on the same

legal theories. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D.Mass. 1991). They need not

show substantial identity between their claims and those of absent class members. *See Priest v.*

*Zayre Corp.*, 118 F.R.D. 552, 555 (D.Mass. 1988). "The question is simply whether a named

plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Abelson*

*v. Strong*, 1987 U.S. Dist. LEXIS 7515, Slip op. at 13 (D.Mass. July 30, 1987). *See also, Opiela v.*

*Bruck*, 139 F.R.D. 257, 260 (D.Mass. 1990), *citing*, *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89

F.R.D. 87, 99 (S.D.N.Y. 1981) ("The action 'is based on conduct not special or unique to the named

plaintiffs,' and all class members seek relief for the 'same or similar injury.'").

Joyce's claims mirror the claims of the absent class members. From 2000 to 2003, Joyce

was employed by Hancock as a Project Manager and Senior Project Manager in the REOD. The

REOD was comprised of Hancock employees, none technically trained to be conversant in Plan

documents or other ERISA documents, who performed various building services within the

Tower Complex, including building maintenance, construction, operations, office space planning

and design, security, safety and purchasing. See *Exhibit 2*. Joyce, like other members of the

REOD unit, was informed by Hancock on May 30, 2003 that he was ineligible to receive his

severance benefits because Hancock had deemed Beacon's job offer to be comparable. Joyce is

a typical victim of Hancock's improper practices. Joyce's claim that he was wrongfully denied

severance and that he was prejudiced as a result of his reading of the SPD are identical to the

causes of action that would be asserted by any of the Putative Class members individually.

There is more than a sufficient nexus between Joyce and absent Putative Class members

to meet the requirements of typicality where, as here, the claims of Joyce and Putative Class

members arise from the same course of events and liability would be predicated on the same or

similar arguments. Indeed, the claims that Joyce seeks to represent are the legal claims that arise

from Hancock's decision to deny severance benefits to Joyce and members of the Putative Class.

Joyce can reasonably be expected to advance the interests of all Putative Class members toward

a favorable determination with respect to each common issue.

Joyce's claims are typical of the Putative Class members' claims, and therefore satisfy Rule

23(a)(3).

### 4.     Joyce Will Fairly and Adequately Protect the Interests of the Putative Class

The final requirement of Rule 23(a) is that "the representative parties will fairly and

adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). That protection involves two

factors: (1) the interests of the representative plaintiffs and other members of the class must

coincide; and (2) it must appear that the plaintiffs and their attorneys will vigorously prosecute the

action on behalf of the class. *See Mack,* 191 F.R.D. at 23 *(citing Andrews v. Bechtel Power Corp.*,

780 F.2d 124, 130 (1st Cir. 1985)). The existence of the elements of adequate representation are

presumed and [t]he burden is on the defendant[s] to demonstrate that the representation will be

inadequate." *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert denied*, 459 U.S. 880 (1982).

### (a)     Qualifications of the Plaintiffs' counsel

The attorneys seeking to represent the Putative Class in this case are qualified and

experienced trial lawyers who are intimately familiar with complex litigation in general, and

class actions in particular. *See Affidavit of Kevin T. Peters, Esq.* Moreover, Todd &Weld LLP

has had extensive successful experience in class action litigation. Appointment of the

aforementioned attorneys as counsel in this case is also appropriate pursuant to Fed.R.Civ.P.

23(g). Plaintiff's counsel have and will fairly and adequately represent the claims of the Putative

Class. Plaintiff's counsel will and have already committed significant time and resources to the

investigation and development of this action. As the firm's resume reflects, Plaintiff's counsel

11

aslo have the expertise and resources necessary to adequately represent the Putative Class and serve as Class counsel. Thus, the requirements under Rule 23(g) and the second prong of Rule 23(a)(4) are also satisfied.

### (b)    Absence of antagonistic interests

Joyce has and will fairly and adequately protect the interests of all Putative Class members in the prosecution of this action and in the administration of all matters relating to the claims stated in the First Amended Complaint. The interests of Joyce are coincident with, and not antagonistic to, those of the other members of the Putative Class. Indeed, the claims of the Joyce are *identical* to those of the other class members. Joyce shares with the Putative Class the interest in establishing that Hancock's denial of severenace benefits violates federal law. Accordingly, Joyce adequately represents the interests of the Putative Class.

### C.    *The Requirements of Rule 23(b)(3) Are Satisfied*

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23. Plaintiff proceeds here under Rule 23(b)(3) which provides in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> * * *
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)

Here, certification is proper under Rule 23(b)(3) because, as described above, there are numerous issues of law and fact common to the Putative Class.

### 1.    Common Questions of Law and Fact Predominate

No precise, mechanical test exists to determine whether common issues predominate in a proposed class. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). Instead, courts look for "a sufficient constellation of common issues [that] binds class members together." *Id.* The predominance requirement is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000), *cert. denied*, 121 S.Ct. 1354 (2001) (citations omitted); *Heartland Communications v. Sprint Corp.*, 161 F.R.D. 111, 117 (D.Kan. 1995) ("The predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication."); *see also Payne*, 216 F.R.D. 21, 26 (D. Mass. 2003), *citing* 1 *Newberg*, § 4.25, at 4-86.

Plaintiff alleges that Hancock, as the Plan administrator and fiduciary, determined initially and on an illusory administrative appeal, that Joyce was not eligible for severance benefits under the Plan because he was offered and accepted a "comparable position" by Beacon, as defined by Hancock. In its haste to render its decision to deny benefits, Hancock knowingly and unreasonably ignored the plain language of the SPD, which unambiguously interprets the "comparable job provision" as being applicable only "[i]n the event of a sale or outsourcing of a business unit."

Hancock's liability to each member of the Putative Class turns on the same issues, including – (i) whether the sale of the Tower Complex involved a "sale or outsourcing" of the REOD business unit from Hancock to Beacon; (ii) whether Beacon's benefit offerings to Plaintiff and members of the Class were competitive with Hancock's benefit offerings; (iii) whether Hancock

acted arbitrarily and capriciously when it failed to follow its own administrative guidelines and compare Beacon's benefit offerings to those benefits provided to employees in the property management industry; (iv) whether Defendants, by only analyzing select certain benefits were able to fairly and accurately conclude that Beacon's benefit offerings were competitive with Hancock's benefit offerings or with benefit offerings commonly afforded to employees in the property management industry; (v) whether Defendants breached their fiduciary duty to Plaintiff and the Class; (vi) whether a conflict of interest existed when Defendants denied Plan benefits to Plaintiff and the Class; (vii) whether Defendants unjustly benefited from the denial of Plan benefits to Plaintiff and the Class; (viii) whether Defendants intentionally misrepresented to Plaintiff and the Class that the job offers from Beacon were comparable; (ix) whether the Court should review this matter *de novo*; (x) whether Defendants are estopped from denying or interpreting the Plan so as to deny Plan benefits to Plaintiff and the Class; (xi) whether Defendants drafted the Plan Amendment in such a way that could not be understood by the average plan participant; (xii) whether Defendants knew or should have known their failure to define "competitive benefit offerings" would cause confusion among Plan participants; (xiii) whether Plaintiff and members of the Putative Class were prejudiced as a result of their reading of the SPD; (xiv) whether Hancock acted wholly unreasonably (or incorrectly) when it denied Plan benefits to Joyce and the Putative Class.

Joyce has alleged a uniform practice implemented by Hancock against Joyce and the Putative Class members. Accordingly, the issues of law and fact which flow from defendants' uniform activity predominate over any individual issue.

**2.    A Class Action is Superior to Other Alternatives**

The final hurdle the Plaintiffs must clear under Rule 23(b)(3) is the requirement that they demonstrate that "a class action is a fair and efficient method of adjudicating the controversy and would be superior to other methods." *Mack*, 191 F.R.D. at 25. The Court's determination of superiority does not rest upon a finding that the class action device is the ideal solution to this litigation. Rather, the Court need find only that the class mechanism is superior to other available means. Fed.R.Civ.P. 23(b)(3); *see also Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 529 (M.D. Ala. 1992). The class methodology is superior in this case.

### (a)    Judicial economy weighs heavily in favor of class certification

Judicial economy requires that this action proceed through the class action vehicle. Joyce and the Putative Class' only alternative to proceeding as a class action is to file individual claims. To do so would be time consuming and redundant, as each plaintiff would be required to conduct discovery into Defendants' actions to prove exactly the same allegations and proffer exactly the same evidence. Each plaintiff would then be required to brief and argue the same questions of law. Given that all of the issues raised in this case will be the same issues raised by Putative Class members on an individual basis, anything other than a class action would waste judicial resources. *See Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 679 (D.Kan. 1989) (relitigation of common issues in over 100 individual actions would be grossly inefficient and a waste of judicial resouces).

### (b)    Denying class certification would effectively deprive the class members of their day in court

A class action is not merely a superior alternative; in this instance, it is the only practical way to adjudicate this controversy. For most members of the Putative Class, the litigation costs alone would far exceed any potential recovery if they were to pursue their claims on an individual basis. This is particularly true given the "David vs. Goliath" prospect of going it

15

alone against a Fortune 500 company. In view of this situation, most of the class members would effectively be denied their day in court if it were left to each individual to bring a separate action. As an Illinois Federal district court put it,

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D.Ill. 1977); s*ee also Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (in deciding the "best" available method, it is appropriate for a court to consider the ". . . improbability that large numbers of class members would possess the initiative to litigate individually").

### (c)    That the damages among the individual class members will be different is not inconsistent with a finding of superiority

Like many class action lawsuits, there will be differences among the class members as to the amount of damages they have incurred or will incur. However, the need for individual damage calculations does not defeat class certification where common questions as to liability predominate. *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 311-12 (3d Cir. 1998); *see also Smilow v. Southwestern Bell Mobile Sys., Inc.*, 23 F. 3d 32, 38 (1st Cir. 2003) ("The individualization of damages . . . is rarely determinative under Rule 23(b)(2)"). "[T]he potential for differing amounts of restitution does not automatically preclude class certification." *Mack*, 191 F.R.D. at 25, *citing, Samuel v. University of Pittsburgh*, 538 F.2d 991, 995 (3rd Cir. 1976). *See also, Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); 1 *Newberg*, § 4.26 at 4-90-91, *citing, Rules Advisory Committee Notes to 1966 Amendments to Rule 23*, 39 F.R.D. (1966) ("In most cases, the amount of damages suffered is an individualized matter, but the

Advisory Committee Notes expressly state that such needed individualized proof of damages will not preclude a finding of predominance."). Indeed, as the Third Circuit noted in *Samuel v. University of Pittsburgh*, the lack of uniformity of damages among the class members may be "a truism . . . inherent in almost every class action brought under Rule 23 . . . . Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution." *Samuel*, 538 F.2d at 995.

### (d)    Management difficulties

There is no question that this class action would be easily manageable. This case presents no manageability difficulties that would preclude class certification. Management of this litigation through class treatment is far superior to any alternative management technique. Here, the parties have engaged in extensive discovery, including the taking of five depositions and the exchange of all forms of written discovery, including the production and review of thousands of pages of documents. To require seventy-three separate claimants to engage in the same form of discovery would prove inefficient for all parties and the Court.

In comparison with individual joinder, the class device presents far fewer management difficulties. As the court stated in *In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 282 (S.D.N.Y. 1971):

> Finally, there is the question of whether difficulties in the management of these actions preclude a finding that the class action is 'superior to other available methods for the fair and efficient adjudication of the controversy.' It should be noted at the outset that difficulties in management are of significance only if they make the class action a less 'fair and efficient' method of adjudication than other available techniques. This perspective is particularly important in the present case where the defendants, after reciting potential manageability problems, seem to conclude that no remedy is better than an imperfect one.

*In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 282 (S.D.N.Y. 1971)

It is apparent that seventy-three trials of separate claims by the Putative Class members is not a superior method for handling this litigation. A class action provides the best procedural vehicle for the resolution of the Putative Class' claims.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court certify a class of persons as set forth in detail above.

Respectfully submitted,

DANIEL JOYCE, et al.

By his attorneys,

/s/ Kevin T. Peters
Kevin T. Peters (BBO#: 550522)
kpeters@toddweld.com
Seth J. Robbins (BBO#: 655146)
srobbins@toddweld.com
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: August 22, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Fling (NEF) and paper copies will be sent to those indicated as non registered participants on August 22, 2006.

/s/ Seth J. Robbins___
Seth J. Robbins

Date: August 22, 2006

# Exhibit 1



EXHIBIT NO. 1
5.16.06
c

## BEACON CAPITAL PARTNERS MANAGEMENT, LLC
### EMPLOYEE LIST
_(exempt ADs employees)_

| Name | Home Department | Title | Start Date | Salary (Annual) | Hours/Week | Rate (Hourly) | Bonus Potential (%) |
|---|---|---|---|---|---|---|---|
| Michael A. Albano, Jr. | HVAC | HVAC Technician | 7/14/03 | $46,000 | 40 | 22.1154 | 5% |
| Arian N. Allen | Security | Customer Service Rep. | 7/14/03 | $28,160 | 37.5 | 14.441 | 5% |
| Merritt E. Belle Isle | HVAC | HVAC Technician | 7/14/03 | $51,150 | 40 | 24.5913 | 5% |
| Michael Bonanno | Security | Security Officer | 7/14/03 | $42,000 | 40 | 20.1923 | 5% |
| Edward Bridgelal | Security | Security Officer | 7/14/03 | $40,260 | 40 | 19.3558 | 5% |
| Barry A. Camiel | Security | Vice President | 7/14/03 | $105,000 | N/A | N/A | 25% |
| Harry M. Carmody | HVAC | HVAC Technician | 7/14/03 | $51,400 | 40 | 24.7115 | 5% |
| Jeremy T. Carpenter | Security | Security Officer | 7/14/03 | $34,662 | 40 | 16.674 | 5% |
| Mark Cataldo | HVAC | HVAC Technician | 7/14/03 | $49,100 | 40 | 23.5058 | 5% |
| Donald W. Chapman | Electrical | Electronics Technician | 7/14/03 | $47,900 | 40 | 23.0288 | 5% |
| Mary Ann Connors | Security | Production Control Analyst | 7/14/03 | $39,800 | 37.5 | 20.4103 | 5% |
| Martin J. Costello | HVAC | HVAC Technician | 7/14/03 | $51,200 | 40 | 24.6154 | 5% |
| Sean P. Coughlin | Security | Security Officer | 7/14/03 | $28,050 | 40 | 13.4856 | 5% |
| Kelford E. Council | Security | Security Officer | 7/14/03 | $36,850 | 40 | 17.7163 | 5% |
| Paul Crowley | ADMIN | Sr. Vice President | 7/14/03 | $180,000 | N/A | N/A | 60% |
| Dorothy F. DaSilva | General Building | Administrative Assistant | 7/14/03 | $43,400 | 37.5 | 22.2564 | 5% |
| Philip J. Dow | HVAC | Assistant Foreman | 7/14/03 | $59,000 | 40 | 28.75 | 5% |
| Alan C. Downen | HVAC | HVAC Technician | 7/14/03 | $53,680 | 40 | 25.8077 | 5% |
| John F. Duman | General Building | Vice President | 7/14/03 | $160,000 | N/A | N/A | 25% |
| Richard H. Dusablon | Electrical | Electrician | 7/14/03 | $49,500 | 40 | 23.7981 | 5% |
| Curtis Ewing | Security | Security Officer | 7/14/03 | $34,558 | 40 | 16.6144 | 5% |
| Edward J. Falanga, Jr. | Electrical | Electrician | 7/14/03 | $49,600 | 40 | 23.8462 | 5% |
| John E. Ford | HVAC | HVAC Technician | 7/14/03 | $43,890 | 40 | 21.201 | 5% |
| Jonathan E. Froio | Security | Security Officer | 7/14/03 | $43,010 | 40 | 20.6779 | 5% |
| John Gallus | HVAC | HVAC Technician | 7/14/03 | $48,000 | 40 | 23.0769 | 5% |
| William S. Galloway | HVAC | Assistant Foreman | 7/14/03 | $61,000 | 40 | 29.6154 | 5% |
| John F. Glancy | Security | Watch Commander | 7/14/03 | $69,520 | 40 | 33.4231 | 10% |
| Martin T. Guinazzo | HVAC | HVAC Technician | 7/14/03 | $53,790 | 40 | 25.8606 | 5% |
| Joshua Gustafson | Security | Security Officer | 7/14/03 | $27,940 | 40 | 13.4327 | 5% |
| Macklyn D. Harding | Security | Security Officer | 7/14/03 | $48,400 | 40 | 23.2692 | 5% |
| Shaun Indeglia | Electrical | Electronics Technician | 7/14/03 | $45,600 | 40 | 21.9231 | 5% |
| Marie R. Jean Francois | Security | Security Officer | 7/14/03 | $27,500 | 40 | 13.2212 | 5% |
| Jerilyn Johansen | General Building | Customer Service Analyst | 7/14/03 | $33,200 | 37.5 | 17.0256 | 10% |
| Daniel P. Joyce | General Building | Project Manager | 7/14/03 | $75,100 | 37.5 | N/A | 5% |
| Justin H. Kavka | HVAC | HVAC Technician | 7/14/03 | $51,400 | 40 | 24.7115 | 10% |
| Dwayne P. Kelley | Security | Security Officer | 9/3/2003 | $40,590 | 40 | 19.5144 | 5% |
| Malgorzata G. Kubica | Security | Customer Service Rep. | 7/14/03 | $35,600 | 37.5 | 18.2564 | 5% |
| Michael P. Linane | HVAC | Foreman | 7/14/03 | $62,000 | 40 | 29.9077 | 5% |

## BEACON CAPITAL PARTNERS MANAGEMENT, LLC
### EMPLOYEE LIST
*former full-time employees*

| Name | Home Department | Title | Start Date | Salary (Annual) | * | Hours/Week | Rate (Hourly) | Bonus Potential (%) |
|------|-----------------|-------|------------|-----------------|---|------------|---------------|---------------------|
| Ernesto V. Luy | HVAC | HVAC Technician | 7/14/03 | $44,800 | | 40 | 21.5385 | 5% |
| Arthur D. MacAlpine | HVAC | Assistant Foreman | 7/14/03 | $61,600 | * | 40 | 29.6154 | 5% |
| David Magliocchetti | HVAC | Plumber | 7/14/03 | $48,100 | | 40 | 23.125 | 5% |
| Michael E. Magyar | Security | Security Officer | 7/14/03 | $31,790 | * | 40 | 15.2837 | 5% |
| Joseph F. Marco | Electrical | Foreman | 7/14/03 | $70,000 | * | 40 | 33.6538 | 5% |
| Brian J. McDonald | Security | Security Officer | 7/14/03 | $29,920 | | 40 | 14.3846 | 5% |
| Kevin J. McDonnell | Security | Security Officer | 7/14/03 | $29,920 | * | 40 | 14.3846 | 5% |
| Gerard P. McGloughlin | Electrical | Electrician | 7/14/03 | $53,000 | | 40 | 25.4808 | 5% |
| John S. McGrath | Security | Security Officer | 7/14/03 | $41,250 | * | 40 | 19.8317 | 5% |
| Juanita Mensah-Weeks | Security | Customer Service Rep. | 7/14/03 | $34,500 | | 37.5 | 17.5923 | 5% |
| Donald W. Moores | Security | Security Officer | 7/14/03 | $44,400 | | 40 | 21.3462 | 5% |
| Jerome E. Mrockowski | | Locksmith | 11/3/2003 | $39,800 | | 37.5 | 20.41 | |
| Jerry Y. Muhammed | HVAC | HVAC Technician | 7/14/03 | $50,710 | * | 40 | 24.3798 | 5% |
| Daniel J. O'Leary | HVAC | HVAC Technician | 7/14/03 | $46,100 | | 40 | 22.1634 | 5% |
| Kevin O'Neil | Security | Customer Service Rep. | 7/14/03 | $39,820 | | 37.5 | 20.4205 | 5% |
| Peter E. Paluzzi | HVAC | HVAC Technician | 7/14/03 | $56,320 | * | 40 | 27.0769 | 5% |
| Richard M. Poirier | Security | Security Officer | 7/14/03 | $46,640 | * | 40 | 22.4231 | 5% |
| Harry J. Prestier | Security | Security Officer | 7/14/03 | $36,000 | | 40 | 17.3077 | 5% |
| Robert H. Raymond | General Building | Receiving Clerk | 7/14/03 | $35,900 | | 40 | 17.2596 | 5% |
| Brian P. Reynolds | General Building | Receiving Clerk | 7/14/03 | $37,000 | | 40 | 17.7885 | 5% |
| Domenic Ricci | General Building | Stock Room Attendant | 7/14/03 | $37,500 | | 40 | 18.0288 | 5% |
| Ronald K. Rossi | Security | Security Officer | 7/14/03 | $39,930 | * | 40 | 19.1971 | 5% |
| Victor Santiago | General Building | Receiving Clerk | 7/14/03 | $28,300 | | 40 | 13.6058 | 5% |
| Brian Schnabel | Security | Security Officer | 7/14/03 | $25,600 | | 40 | 12.3077 | 5% |
| Patrick A. Tempesta | HVAC | HVAC Technician | 7/14/03 | $47,410 | * | 40 | 19.1971 | 5% |
| Joseph A. Tiberi | General Building | Stock Room Supervisor | 7/14/03 | $48,200 | | 40 | 23.1731 | 5% |
| David J. Tighe | HVAC | Assistant Foreman | 7/14/03 | $59,900 | | 40 | 28.75 | 5% |
| Holly Tingos | ADMIN | Administrative Assistant | 7/14/03 | $40,800 | | 37.5 | 20.9231 | 5% |
| John M. Vincent | HVAC | HVAC Technician | 7/14/03 | $56,100 | * | 40 | 26.9712 | 5% |
| Dennis A. Vining | Electrical | Electrician | 7/14/03 | $52,800 | | 40 | 25.3046 | 5% |
| James M. Ward | HVAC | Plumber | 7/14/03 | $50,200 | | 40 | 24.1346 | 5% |
| Paul White | Security | Security Officer | 7/14/03 | $29,744 | | 40 | 14.3 | 5% |
| Barry Wilson | Security | Assistant Watch Commander | 7/14/03 | $57,200 | | 40 | 27.5 | 5% |
| David M. Wright | General Building | Project Manager | 7/14/03 | $68,100 | * | 37.5 | 34.9231 | 10% |
| Enzo Zelano | Electrical | Assistant Foreman | 7/14/03 | $54,200 | | 40 | 26.0577 | 5% |

\* Includes 10% shift differential

BEACON CAPITAL PARTNERS MANAGEMENT, LLC
EMPLOYEE LIST
*lower job employees*

| Name | Home Department | Title | Start Date | Salary (Annual) | Hours/Week | Rate (Hourly) | Bonus Potential (%) |
|------|-----------------|-------|------------|-----------------|------------|---------------|---------------------|
| **Co-Op Students** | | | | | | | |
| Sarah McKenna | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Samantha Petrucelli | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Karl R. Schmidt | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Timothy P. Shinney | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Brian A. Verkaart | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Justin B. Walker | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Daniel Walto | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |
| Jason A. Williams | Security | Co-op Student | 7/14/03 | N/A | 37.5 | 11.5 | N/A |

*Co-op program ran June - December - they worked for J.H. for a little over one month then transferred to BCPM*

BCPM 00023

JOY 000990

Exhibit 2



# Real Estate Operations



Paul Crowley
Vice President
Real Estate Operations

John Heavey
2nd Vice President
Security Administration

John Durnan
General Director
Building Operations

Marc Surprenant
Director
Facilities Planning

Tom Dunn
Director
Real Estate Operation
Facilities

Bob Burbank
Director
Building Construction

Dave Johnson
Director
Strategic Sourcing

Scott London
General Director
Document Solutions

Beverly Heaslip
Manager
Record Services

3/2003

CONFIDENTIAL

JH 000159